UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON RUTHERFORD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TAYLOR TRANSPORT, INC., a Washington corporation,<br><br>　　　　　Defendant. | Case No. 3:20-cv-05369<br><br>**COMPLAINT**<br><br>JURY DEMAND |

PLAINTIFF Cameron Rutherford, by and through his attorney herein, hereby alleges as follows against DEFENDANT Taylor Transport, Inc.:

### I.   NATURE OF THE ACTION

1.1   Plaintiff Cameron Rutherford was a truck driver for Defendant Taylor Transport until February 2019 when Defendant fired him, just days after Plaintiff had engaged in activities protected by the Federal Surface Transportation Assistance Act, 49 U.S.C. § 31105 ("STAA"). With this lawsuit, Plaintiff asserts claims that relate generally to Defendant's retaliation against him for opposing and reporting violations of the STAA. Plaintiff seeks

**COMPLAINT**
Case No.

PAGE - 1

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

monetary relief, including economic, noneconomic and punitive damages, and attorney's fees and costs.

## II. PARTIES

2.1 At all material times hereto, Plaintiff Cameron Rutherford was a resident of Clark County, Washington. Defendant Taylor Transport employed Plaintiff in the State of Washington as a driver of commercial motor vehicles (truck) with a gross vehicle weight exceeding 10,001 pounds. Defendant employed Plaintiff from December 2017 until February 25, 2019.

2.2 Defendant Taylor Transport, Inc., is a Washington domestic corporation. Defendant is located and has its principal place of business in Clark County, Washington.

## III. JURISDICTION & VENUE

3.1 Plaintiff's claims arise primarily under the Federal Surface Transportation Assistance Act, 49 U.S.C. § 31105, which gives the Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3.2 All jurisdictional pre-requisites have been met for alleged violations of the STAA. Plaintiff filed an administrative complaint with the U.S. Department of Labor, Occupational Safety & Health Administration, Whistleblower Protection Program ("OSHA"), on or about February 21, 2019. More than 210 days have passed since initial administrative filing with OSHA, and the Agency has not completed its investigation or made any findings.

3.3 Pursuant to 28 U.S.C. § 1367, the Court has supplemental subject matter jurisdiction over any related Washington State law claims alleged herein.

**COMPLAINT**
Case No.

PAGE - 2

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

3.4   Venue is proper pursuant to 28 U.S.C. § 1391, as certain material acts and omissions alleged herein, including Defendant's termination of Plaintiff from employment, occurred in Clark County, Washington.

### IV.  FACTUAL ALLEGATIONS

4.1   Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

4.2   Plaintiff was a commercial motor vehicle driver for Defendant.  Plaintiff drove trucks with a gross vehicle weight exceeding 10,001 pounds, and affected interstate commerce by transporting goods over state lines.

4.3   During his employment with Defendant from December 2017 to February 2019, Plaintiff's job performance was satisfactory or better.

4.4   On Monday, February 18, 2019, Plaintiff drove a commercial motor vehicle for Defendant.

4.5   On or about February 18, 2019, Defendant informed Plaintiff of his driving route for the next day.  His commercial motor vehicle would be a "pneumatic double" truck, which had special pneumatic tanks filled with powder.  The route required Plaintiff to drive round trip the same day from Defendant's work site in Vancouver, Washington, to a customer site in Medford, Oregon.  In response to being informed of his route, Plaintiff questioned whether he would be able to make the trip in one day within his legal on duty hours.  Defendant assured him he could, and that if the first job was successful, in the coming days Defendant would re-assign both Plaintiff and another driver to perform a daily route to the same Medford, Oregon customer.

4.6   On February 19, 2019, Plaintiff started his scheduled workday at 3:00 a.m.  After performing his pre-trip inspections and having his truck loaded, Plaintiff drove to a

**COMPLAINT**
Case No.

PAGE - 3

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

customer's site in Medford. While there, Plaintiff waited for his truck to be unloaded. During that time Plaintiff talked with drivers from other companies, who had driven from Portland, Oregon. Plaintiff learned that (due to the nature of the cargo and unloading wait times), from Portland to Medford was generally not a same-day round trip, and that other drivers had overnight accommodations.

4.7 Shortly after Plaintiff's truck was unloaded, early in the afternoon of February 19 Plaintiff called and spoke to his supervisor, Mike Dalton. Plaintiff expressed concern trying to return to Vancouver that same day. Plaintiff also told Dalton that Plaintiff was tired and needed a break, and he would likely not return to Defendant's Vancouver site within the hours-of-service limit. Dalton told Plaintiff the Company needed Plaintiff's truck the next day, and that Plaintiff should use an apparent "16-hour" exemption from the normal on duty hours for commercial truck drivers. Dalton said Plaintiff could make it back to Vancouver if Plaintiff just kept driving. Dalton made clear that Taylor would not make overnight accommodations for Plaintiff. Dalton hung up on Plaintiff.

4.8 Plaintiff did not believe he had a "16-hour exemption" to use, but believing he could be disciplined or fired if he did not drive his truck back that day, Plaintiff started back to Vancouver.

4.9 Defendant required that Plaintiff return to Vancouver the same day because Taylor had scheduled Plaintiff's truck to be in service at the start of the next day, February 20, 2020.

4.10 A short time later while re-fueling his truck, Plaintiff texted Taylor Transport's dispatch person to also tell her he could not return within his allotted time; he asked her what he should do. The dispatcher did not immediately respond to Plaintiff's text. Eventually the

**COMPLAINT**
Case No.

PAGE - 4

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

dispatcher responded; she also told him to use an apparent 16-hour exemption. Plaintiff did not believe he had such an exemption to use, but resumed driving.

4.11 Plaintiff became fatigued while driving back to Vancouver, Washington. At around the 16-hour mark, Plaintiff was forced to stop just off Interstate 205 in Oregon City, Oregon. At that point he was still almost 30 miles from Taylor's site where the truck was to be returned. Plaintiff was completely fatigued.

4.12 In light of his fatigue, Plaintiff believed he could not safely drive his truck any farther, and. that doing so might result in serious injury to himself and/or others. Plaintiff therefore called and spoke with Taylor employee Bill Koegle, telling Koegle he was exhausted and could not drive any more. Plaintiff said he did not want to break the law any more than he already had; and asked if another employee was available to come relieve him to drive the truck the rest of the way. Koegle indicated no one was available to relieve Plaintiff. Koegle further stated Plaintiff needed to "get over it" and drive back. Plaintiff again said he did not want to further break the law, and that this was not worth his truck driving career. Koegle indicated Taylor would not pay for accommodations for Plaintiff, that Plaintiff needed to bring the truck back, and otherwise to call Taylor supervisor Mike Dalton. Koegle hung up on Plaintiff.

4.13 Plaintiff then called Dalton and told Dalton the same concerns he had told Koegle. Dalton said that if he were Plaintiff, he would drive the truck back to Taylor Transport. Dalton ended the call by abruptly hanging up on Plaintiff.

4.14 Believing that his job would be in jeopardy if he did not return to Taylor's site in Vancouver, Plaintiff resumed driving. He reached Taylor's site after 7:00 p.m. that night,

**COMPLAINT**
Case No.

PAGE - 5

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

approximately 16 hours, 45 minutes after he had started his shift at 3:00 a.m. Plaintiff had driven roughly 599 miles on February 19, 2019.

4.15 In performing his post-trip duties after he returned to Taylor's site on February 19, Plaintiff made notations in his Electronic Logging Device (ELD) records, including that he had been forced to continue driving under duress. Plaintiff also accurately logged his total time (approximately 17 total hours) spent.

4.16 After Plaintiff had returned to Taylor's Vancouver site on the evening of February 19, the other Taylor employee assigned to the same Medford route also arrived. Plaintiff asked that other employee if he was going to file a report with the U.S. Department of Transportation Federal Motor Carrier Safety Administration (FMSCA). Plaintiff mentioned to that co-worker that filing a report would be the right thing to do.

4.17 By February 20, 2019, Plaintiff had developed flu-like symptoms. That morning, Plaintiff notified Taylor he was ill. He talked to Taylor's dispatcher, who during the conversation apologized to Plaintiff for the February 19 trip. The dispatcher assured Plaintiff that she was not involved in planning it.

4.18 Even though he had called in sick on February 20, that day Defendant's personnel lodged multiple texts and phone calls to Plaintiff, asking if he could work on February 21. Plaintiff responded that he was ill, and did not yet know if he could work.

4.19 On February 21, 2019, Taylor management texted Plaintiff indicating that he needed to soon come in for a meeting, to in part discuss "discrepancies" in Plaintiff's time records for the February 19 trip. Plaintiff responded that same day saying he was still sick, but

**COMPLAINT**
Case No.

PAGE - 6

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

informed Dalton he would call Taylor's owner, Mike Leboki. Plaintiff called Leboki and left a voicemail, and also texted him. Leboki did not respond.

4.20 On February 21, 2019, Plaintiff filed a complaint with OSHA. Plaintiff reported the events of the February 19 trip, including his fatigue and exceeding on-duty hours.

4.21 By February 19, 2019, Defendant knew of Plaintiff's fatigue, and his opposition to: driving while fatigued; not being accommodated to avoid driving while fatigued; and being on duty and/or driving over his hours-of-service.

4.22 Defendant should have foreseen that a same day, round trip from Vancouver, Washington to Medford, Oregon on February 19, 2019, could or would exceed its drivers' legal or permissible hours-of-service, and/or could cause drivers to become fatigued.

4.23 On February 22, 2019, Plaintiff texted Leboki that Plaintiff was able and available to work. Leboki did not respond.

4.24 On the morning of February 25, 2019, Plaintiff met with owner Leboki at Taylor's office in Vancouver. The first issue Leboki raised was why Plaintiff had recorded 17 hours for the February 19 haul. Leboki asked, because Plaintiff's co-worker who had arrived back at Taylor's site after Plaintiff, recorded only 16 hours for the trip. Leboki accused Plaintiff of having a problem with "eat[ing]" an hour of time. Plaintiff responded he had a problem with violating the law.

4.25 During the meeting Leboki also asked Plaintiff if Plaintiff had contacted USDOT and reported Taylor for the February 19 haul. Plaintiff confirmed he had. In response, Leboki told Plaintiff he no longer had a job. Leboki commented that "kids" today were soft, and

**COMPLAINT**
Case No.

PAGE - 7

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

bragged the Company had guys who worked anywhere between 17 and 20 hours a day. At some point, Leboki asked Plaintiff that now he did not have a job, "how does that feel?"

4.26 Within a few hours after Plaintiff had left the February 25 meeting, Leboki called and told Plaintiff that what Leboki did was for the best.

4.27 At no time during or after the meeting on February 25, 2019, did Defendant offer Plaintiff his job back.

4.28 Defendant's termination of Plaintiff's employment violated 49 U.S.C. § 31105, and caused Plaintiff to incur economic and non-economic damages, including but not limited to lost employment compensation and emotional distress.

4.29 In addition to filing a report with OHSA, in February 2019 Plaintiff reported Defendant's safety violations to the Federal Motor Carrier Safety Administration ("FMSCA").

4.30 In May 2019 the FMSCA investigated Defendant Taylor Transport.

4.31 As a result of its May 2019 investigation, the FMSCA determined that Defendant had violated certain provisions of the Federal Motor Carrier Safety Regulations (49 C.F.R. Parts 350-399).

4.32 After his termination from Taylor Transport, Plaintiff was unable to obtain employment in his chosen profession as a commercial truck driver. To date, he has been unable to work in that capacity.

## V. FIRST CLAIM FOR RELIEF
(Retaliation for Opposing Operation of Unsafe Vehicle)

5.1 Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

**COMPLAINT**
Case No.

PAGE - 8

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

5.2 Pursuant to 49 U.S.C § 31105(a)(1)(B), the STAA prohibits any person, including an employer, from retaliating against an a driver for refusing to operate a commercial motor vehicle because such operation: violates a commercial motor vehicle regulation, standard or order relating to safety, health or security of the vehicle; or the employee has a reasonable apprehension of serious injury to the employee or public because of the vehicle's hazardous safety or security condition.

5.3 In order to promote safe operation of commercial motor vehicles, STAA regulations impose on-duty time limitations for drivers of commercial motor vehicles, and prohibit ill or fatigued drivers from operating commercial motor vehicles.

5.4 Plaintiff's fatigue while on duty on February 19, 2019, gave rise to a hazardous safety condition relating to the operation of his commercial motor vehicle. Defendant had knowledge of: Plaintiff raising the issue of whether the round trip from Vancouver to Medford could be legally accomplished in one day; Plaintiff's report that he might become fatigued; Plaintiff's fatigue; Plaintiff's opposition to continuing to drive while fatigued; and Plaintiff's request to be relieved from duty because of his fatigue.

5.5 Plaintiff's on-duty time in excess of 14 hours on February 19, 2019, gave rise to a hazardous safety condition relating to the operation of his commercial motor vehicle. Defendant intentionally caused, required or coerced Plaintiff to engage in over 14 hours of service, and to drive while fatigued.

5.6 Further, Plaintiff's time spent in excess of 16 hours that day gave rise to or exacerbated a hazardous safety condition relating to the operation of his commercial motor vehicle.

**COMPLAINT**
Case No.

PAGE - 9

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

Defendant intentionally caused, required, or otherwise coerced Plaintiff to incur on-duty time of over 16 hours on that date.

5.7 Plaintiff reasonably believed his fatigue could or did establish a real danger of accident, injury, or serious impairment to health.

5.8 Plaintiff reasonably believed that Defendant directing, requiring or coercing him to exceed his on-duty hours, could or did establish a real danger of accident, injury, or serious impairment to health. Plaintiff also reasonably believed that exceeding his on-duty hours could or did establish such danger.

5.9 On or about February 18, 2019, Plaintiff had requested Defendant prevent one or more hazardous safety conditions that could or would arise on February 19, 2019. Before any violations arose, Plaintiff requested Defendant prevent them. Defendant did not. After one or more violations arose, and/or Plaintiff believed they arose, Plaintiff requested Defendant correct them. Defendant refused, and the conditions remained uncured.

5.10 Plaintiff's conduct relating to his opposition to driving while fatigued, was a contributing factor in Defendant's decision to terminate his employment on February 25, 2019.

5.11 As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits up to the time of trial and future losses, in amounts to be determined at trial.

5.12 As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer non-economic damages including emotional distress and damage to his reputation, in an amount to be determined at trial.

**COMPLAINT**
Case No.

PAGE - 10

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

5.13 Defendant acted with malicious motive, or with reckless or callous indifference, towards Plaintiff's Federal rights, and therefore is liable to Plaintiff for punitive damages.

5.14 Plaintiff is entitled to an award of all alleged damages, pre-judgment interest and appropriate equitable relief, as well as his reasonable costs and expenses, expert witness fees, and attorney's fees.

### VI.  SECOND CLAIM FOR RELIEF
(Retaliation for Reporting Safety Violation, or Perception of Reporting)

6.1 Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

6.2 Pursuant to 49 U.S.C. § 31105(a)(1)(A), the STAA prohibits an employer from retaliating against an employee because either: the employee "has filed a complaint or begun a proceeding relating to a violation of a commercial motor vehicle safety or security regulation, standard or order"; or the employer "perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding relating to a violation of a commercial motor vehicle safety or security regulation, standard or order".

6.3 By February 22, 2019, Defendant knew or should have known of Plaintiff's intention to file a safety complaint or commence a proceeding relating to a violation of a commercial motor vehicle safety regulation.

6.4 By February 22, 2019, Defendant perceived that Plaintiff had filed or was about to file a complaint, or had begun or was about to begin a proceeding relating to a violation of a commercial motor vehicle safety regulation.

6.5 By the morning of February 25, 2019, Plaintiff expressly informed Defendant that he had filed a complaint with OSHA and/or FMSCA.  Defendant thereafter terminated Plaintiff.

**COMPLAINT**
Case No.

PAGE - 11

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

6.6  Plaintiff's acts, including raising with his co-worker the possibility of filing an FMSCA complaint, and Plaintiff's actual filing of the OSHA complaint, were each a contributing factor in Defendant's decision to terminate Plaintiff's employment.

6.7  Defendant's perception or belief that Plaintiff had engaged or was about to engage in protected activity under the STAA such as filing a complaint or starting an administrative proceeding relating to the February 19 trip, was a contributing factor in Defendant's decision to terminate Plaintiff's employment.

6.8  As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits up to the time of trial and future losses, in amounts to be determined at trial.

6.9  As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer non-economic damages including emotional distress and damage to his reputation, in an amount to be determined at trial.

6.10  Defendant acted with malicious motive, or with reckless or callous indifference, towards Plaintiff's Federal rights, and therefore is liable to Plaintiff for punitive damages.

6.11  Plaintiff is entitled to an award of all alleged damages, pre-judgment interest, and appropriate equitable relief, as well as his reasonable costs and expenses, expert witness fees, and attorney's fees.

## VII.  THIRD CLAIM FOR RELIEF
(Retaliation for Accurately Recording Hours on Duty)

7.1  Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

**COMPLAINT**
Case No.

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

PAGE - 12

7.2 Federal regulations require that both the driver and motor carrier ensure the driver's ELD records are accurate. Pursuant to 49 U.S.C. § 31105(a)(1)(C), the STAA prohibits any person from retaliating against an employee who "accurately reports hours on duty".

7.3 By February 19, 2019, Defendant knew or should have known of Plaintiff's accurate recording of his hours on duty in his ELD records for that day. By no later than February 25, 2019, Plaintiff opposed Defendant's expectation, inference, or request that Plaintiff either inaccurately record his hours on duty for February 19, 2019, or that he should not have accurately recorded his hours on duty for February 19.

7.4 Plaintiff's accurate recording of his hours on duty for February 19, 2019, caused Defendant to accuse Plaintiff of having "discrepancies" in his hours. Plaintiff's accurate recording of his hours for February 19, 2019, was a contributing factor in Defendant's decision to terminate Plaintiff's employment.

7.5 Plaintiff's opposition to Defendant's expectation, inference, or request to inaccurately record, or to alter his already-recorded, hours on duty for February 19, 2019, was a contributing factor in Defendant's decision to terminate Plaintiff's employment.

7.6 As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic damages, including lost wages and benefits up to the time of trial and future losses, in amounts to be determined at trial.

7.7 As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer non-economic damages including emotional distress and damage to his reputation, in an amount to be determined at trial.

**COMPLAINT**
Case No.

PAGE - 13

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

7.8 Defendant acted with malicious motive, or with reckless or callous indifference, towards Plaintiff's Federal rights, and therefore is liable to Plaintiff for punitive damages.

7.9 Plaintiff is entitled to an award of all alleged damages, pre-judgment interest and appropriate equitable relief, as well as his reasonable costs and expenses, expert witness fees, and attorney's fees.

## VIII.   FOURTH CLAIM FOR RELIEF
(Failure to Pay Wages Owed – RCW 49.52.050 & 49.52.070)

8.1 Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

8.2 Defendant's unlawful termination of Plaintiff's employment resulted in a deprivation of wages owed to him, in violation of RCW Chapters 49.52 and RCW 49.48, including 49.48.010.  The termination also resulted in Defendant's willful failure to pay those wages, in violation of RCW 49.52.050.

8.3 As a result of Defendant's conduct, including wrongful termination in violation of public policy, Plaintiff is due unpaid wages, and exemplary damages pursuant to RCW 49.52.070.

8.4 Further, Plaintiff is entitled to an award of pre-judgment interest on his unpaid wage amounts, and pursuant to RCW 49.48.030, RCW 49.46.090, and/or RCW 49.52.070, is entitled to attorney's fees and costs to recover his owed wages and exemplary damages.

## IX.  FIFTH CLAIM FOR RELIEF
(Wrongful Termination in Violation of Washington Public Policy)

9.1 Plaintiff re-alleges and incorporates herein all preceding Paragraphs.

9.2 Defendant terminated Plaintiff for exercising one or more rights under the STAA, and for exercising one or more rights under Washington State law such as accurately recording his

**COMPLAINT**
Case No.

PAGE - 14

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

on-duty hours for payment of wages. Defendant's conduct constituted a wrongful discharge of Plaintiff in violation of Washington public policy.

9.3 With 49 U.S.C. § 31105(f)-(g), the STAA expressly provides that its prohibitions against retaliatory action do not preempt or diminish any other provisions of Federal or State law, and do not preempt or diminish "the rights, privileges or remedies of any employee under any Federal or State law". Further, the Act provides that such employee rights and remedies "may not be waived by any agreement, policy, form, or condition of employment."

9.4 To the extent Plaintiff's statutory claims do not provide all adequate remedies for relief, under Washington State common law, he is entitled to any such remedies as may exceed those awarded by Federal or State statute.

9.5 As a result of Defendant's unlawful conduct, Plaintiff has suffered past and future economic and noneconomic damages, including lost wages and emotional distress, in amounts to be proven at trial. To the extent such damages are awarded, Plaintiff also seeks pre-judgment interest on those amounts.

## X. RESERVATION OF RIGHTS

10.1 Plaintiff reserves the right to add, revise, or withdraw any claims, or add additional parties during litigation as information is obtained or disclosed.

**COMPLAINT**
Case No.

PAGE - 15

Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

1. An award of economic damages, including an award of past and future lost wages and compensation to which Plaintiff would have been entitled by reason of employment, and an award of exemplary damages pursuant to Washington State wage law;

2. An award of non-economic damages;

3. An award of punitive damages pursuant to Federal law;

4. A supplemental, monetary "gross up" award necessary to offset any and all tax consequences of a damages and cost award, such as but not limited to attorney's fees;

5. For pre- and post-judgment interest on all amounts as applicable and permitted by law;

6. For an award of all reasonable costs and expenses, expert witness fees, and attorney's fees as permitted by law; and

7. For all other additional relief in any form, as may be appropriate or required to make Plaintiff whole, and/or to deter similar, future conduct by Defendant.

Dated April 17, 2020.

s/ Chey Powelson
Cheyenne "Chey" K. Powelson, WSBA No. 34593
Powelson Law Office, LLC
10121 SE Sunnyside Rd, Ste 1600
Clackamas, Oregon 97105
ckpowelson@powelsonlawoffice.com
Phone: (503) 496 - 5187
Attorney for Plaintiff

**COMPLAINT**
Case No.

PAGE - 16

**Powelson Law Office, LLC**
10121 SE Sunnyside Rd, Ste 300
Clackamas, OR 97015
Phone: (503) 496-5187
www.powelsonlawoffice.com